[Cite as *In re L.J.*, 2019-Ohio-5231.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTERS OF: L.J.. C.J., N.J., S.J. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No.    2019 CA 0079 |
|  | : |                    2019 CA 0080 |
|  | : |                    2019 CA 0081 |
|  | : |                    2019 CA 0082 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Civil appeal from the Licking County Court
of Common Pleas, Juvenile Division, Case
Nos. F2017-0667, F2017-0668, F2017-
0669 & F2017-0670

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 13, 2019

APPEARANCES:

For Licking County JFS

WILLIAM C. HAYES
Licking County Prosecutor
By: MANDY R. DELEEUW
Assistant Prosecutor
42 S. Second St., 4th Floor
Newark, OH 43055

Guardian Ad Litem
STACY JEWELL
9 South Third St.
Newark, OH 43055

For Father – Jeffrey Jacobs

ROBIN LYN GREEN
Box 157
Newark, OH 43058-0157


For – Benecia George
CAROLYN E. FITTRO
1335 Dublin Road, Ste. 1041
Columbus, OH 43215


Attorney  Advocate
SCOTT SIDNER
55 S. Main St., Ste C
Johnstown, OH 43031

*Gwin, P.J.*

{¶1}    Appellant-mother ["Mother"] appeals the July 26, 2019 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Court Division, which terminated her parental rights with respect to her minor children and granted permanent custody of the children to appellee, Licking County Jobs and Family Services ["LCJFS"].

*Facts and Procedural History*

{¶2}    Mother and Father were married on February 5, 2006.  [1T. at 25].[1]  The couple has four children: Child 1, b. 09.11.2006; Child 2, b. 01.09.2008; Child 3, b. 12.30.2008 and Child 4, b. 06.18.2014.

{¶3}    On September 21, 2017, LCJFS requested an ex-parte order for Emergency Shelter Care Custody.  An order of Protective Supervision expired on June 9, 2017, ending a previous case that had been opened since August 2014.  It had been alleged that the family's home was in deplorable conditions and a potential eviction was being filed against the parents.  It was also alleged that the parents had issues in their relationship and with drug use.  On September 22, 2017, the children were found to be dependent minors and were placed in the temporary custody of LCJFS.  The next day, LCJFS filed a Motion for Permanent Custody of all of the children.  The matter was set for a contested hearing and was heard by a Magistrate on February 12, 13, and March 1, 2018.  The Magistrate denied the LCJFS' Motion by Judgment Entry filed April 2, 2018.

---

[1] For clarity, the transcript of the Permanent Custody trial that took place on January 29, 2019 will be referred to by volume and page number as "1T."; the continuation of the permanent custody trial that took place on February 6, 2019 will be referred to by volume and page number as "2T." and the continuation of the permanent custody trial that took place on April 9, 2019 will be referred to by volume and page number as "3T."

[Docket Entry 72]. The magistrate's opinion was adopted by the trial court by Judgment Entry filed April 2, 2018. [Docket Entry 73].

{¶4} On August 22, 2018, LCJFS filed a second Motion for Permanent Custody, with support from the Guardian ad Litem ("GAL"). The GAL filed her report on January 22, 2019. The matter was then heard on January 29, 2019, February 6, 2019 and April 9, 2019. The court also conducted an in-camera interview with the children.

***Permanent Custody Trial.***

{¶5} LCJFS began working with this family on June 9, 2014. All four children were adjudicated dependent and ordered into the temporary custody of LCJFS on August 6, 2014.

{¶6} On May 9, 2016, the children were returned to the parents subject to a Protective Supervision Order ["PSO"] for six months. The PSO was extended an additional six months on November 29, 2016.

{¶7} Mary Ellen Greenwaldt, a social worker that had been involved with the family, testified that during the first case the family's issues were homelessness, financial instability, mental health, employment and finances. LCJFS made referrals to counseling, housing, parenting classes, mental health counselors, and homemaking assistance. Throughout the first case, the parents had difficulty completing a monthly budget and struggled to ensure their monthly bills were paid. In February 2016, the social worker and Alma Lease, the homemaker, had a family team meeting with the family to discuss the lingering concerns, which were the cleanliness of the home, unstable finances and personal hygiene. The family made progress and LCJFS began transitioning the children home.

{¶8}    LCJFS provided the family with new beds for the children, cleaning supplies, closet systems and other items to help set the family up for success once the case closed. LCJFS assisted in showing the family how to clean and physically helped them clean the rooms of the children and build the beds.  The PSO ultimately expired on June 9, 2017.

{¶9}    Three months later, in September 2017, a referral came into LCJFS.  Social worker Greenwaldt went back to the home.  She observed deplorable conditions.  She testified the home looked completely different from when LCJFS closed their case in June 2017.  Some of the furniture LCJFS had purchased was still unbuilt and some was broken. There was trash throughout the home.  A friend of the father's was living the basement. He was asleep with an unknown woman.  The social worker observed drug paraphernalia in the basement.  Due to the presence of drug paraphernalia, drug screens were requested of both parents.  Father tested positive for methamphetamine.  Mother admitted to using methamphetamine one time.

{¶10}   After the first permanent custody trial, in an attempt to improve efforts at working with the family, LCJFS assigned social worker Matthew Tracy to work with the parents.  Social worker Greenwaldt continued to work with the children.  Mr. Tracy was assigned the case on May 21, 2018.  He created an updated Case Plan with the goal of reunification, which was filed on June 1, 2018.  He created this plan with input from the parents, with four primary areas to work on: 1) housing (both maintaining a home and ensuring the home was clean and appropriate); 2) finances and budget; 3) substance abuse issues; and 4) mental health issues. Mr. Tracy did not believe the substance abuse was a problem for either Mother or Father.  He testified he does "believe the parents that it was probably a one or two-time thing" but he has not seen signs of ongoing issues.

{¶11}   Testimony established that the parents had maintained their home for the entirety of the case.  However, there were concerns expressed that the parents could not maintain the cleanliness of their home, by Alma Lease, a family aide and the caseworker.

{¶12}   Caseworker Tracy testified that an aspect of the case plan dealt with budgeting.  Testimony confirmed that the parents had attempted to do budgeting with LCJFS and Mid-Ohio, a counseling service.   However, LCJFS continued to have concerns because the parents had only provided them with a budget listing their major expenses and had not reported to him the miscellaneous expenses and receipts.

{¶13}   Another aspect of the case plan counseling for the parents.   Testimony confirmed that the parents had requested this objective be listed on the case plan and that both parents were engaged in individual counseling and marriage counseling.

{¶14}   Home visits were another area of concern for Mr. Tracy.  Unannounced home visits have been a struggle with this family.  He made "many attempts."  Since he began his involvement with the family, Mr. Tracy has been in their house unannounced on two occasions.

{¶15}   The first unannounced visit took place on February 6, 2019.  The house was very dark and the social worker asked them to turn some lights on; however, the family said that they had no working light bulbs.  The house was barely furnished.  In the kitchen, Mr. Tracy opened the freezer and discovered that the electric had been turned off.  Additionally, he observed the freezer covered in bugs.  There was no food in the refrigerator or freezer.  He testified, "It was pretty disgusting."  The Father told Mr. Tracy

that they had elected to turn off the gas downstairs to save some money, and the water pipes burst because they froze.

{¶16}  The second home visit took place on Thursday prior to the final day of trial. Mr. Tracy had to knock four or five times "pretty aggressively because [he] could hear somebody inside."  When no one answered the door, Mr. Tracy put a business card in the door.  He then went to the other door of the home and knocked with no response.  As he was leaving, he could see the side door and noticed the card was gone.  Mr. Tracy went back and knocked again. The Father answered and allowed him in the home.  This time the electric in the home was on.  The refrigerator was broken.  The smoke detector was beeping, indicating that it needed new batteries.

{¶17}  The last aspect of the case plan addressed visiting the children. Testimony confirmed that the parents attended visits with the children throughout the life of the case

{¶18}  The children are in foster care and have been in foster care, including in the previous case for a total of 37 months.  Since their removal in September 2017, the children have been placed together and remained in one placement the entire time.  All four of the children have some behavioral issues.  Visits never progressed from supervised at the Agency.  Social worker Greenwaldt testified that the children were scared to go home and were very angry with their parents.

{¶19}  The magistrate filed a decision granting LCJFS's motion for permanent custody on June 27, 2019.  The Judge then adopted and approved the Magistrate's Decision on the same day.  Mother, through trial counsel, filed an Objection to the

Magistrate's Decision on July 3, 2019.  Father, through trial counsel, filed an Objection to the Magistrate's Decision on July 9, 2019.

{¶20}  By Judgment Entry filed July 26, 2019, the trial court, after conducting an independent examination of the record, overruled the Father and the Mother's objections and approved and adopted the decision of the magistrate.

*Assignments of Error*

{¶21}  "I.   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS [OF THE CHILDREN] TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF THEIR PARENTS AND THEM [sic.] IN THE PERMANENT CUSTODY OF LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN SERVICES DEPARTMENT.

{¶22}  "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT [THE CHILDREN] COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THEIR MOTHER."

I & II.

{¶23}  In her First Assignment of Error, Mother first contends that the Permanent Custody hearing was not conducted within 120 days as mandated by R.C. 2151.414(A)(2).

{¶24}  R.C. 2151.414(A)(2), however, provides that the court for "good cause shown" may continue the hearing beyond the 120-day deadline.  Mother does not argue

that the trial court abused its discretion in scheduling the permanent custody trial beyond the 120-day deadline.

{¶25}  An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In re *Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

{¶26}  We find the trial court did not abuse its discretion in the scheduling of the permanent custody trial.  Mother has cited no prejudice or evidence that would indicate that the trial court's scheduling was untenable, legally incorrect, or amount to a denial of justice.

{¶27}   In her First and Second Assignments of Error, Mother asserts that the trial court's decision is against the sufficiency and weight of the evidence.  [Mother's Brief at 10; 11].

**Burden of Proof**

{¶28}  "[T]he right to raise a child is an 'essential' and 'basic' civil right."  *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972).  A parent's interest in the care, custody and management of his or her child is "fundamental."  Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982).  The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case."  *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991).

Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

**{¶29}** An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**STANDARD OF APPELLATE REVIEW.**

**{¶30}** The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶31}  In *Cross,* the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts.  The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself.  Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value.  *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.*  See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478.  (Emphasis added).

### Requirements for Permanent Custody Awards

{¶32}  R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶33}  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶34}  Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

1. **Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a). [Mother's Second Assignment of Error (Mother's Brief at 9)].**

{¶35}  The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  R.C. 2151 .414(E).  The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)—(15), the court shall determine the children cannot or should not be placed with the parent.  A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶36}  R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

{¶37}  R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion.  These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶38}  As set forth above, the trial court's findings are based upon competent credible evidence.  The record includes the recommendation of the guardian ad litem for the children, and the testimony of the witnesses at trial.  The trial court was in the best position to determine the credibility of the witnesses.

{¶39}  In the denial of the First Motion for Permanent Custody, the magistrate cautioned the parents as follows,

> The Magistrate completely understands the position of the State and the guardian ad litem.  In fact, the Magistrate finds that the State of Ohio proved all of the elements of its case except in regard to the best interest of the children.  Because the children would still like to be reunited with their parents and because some of the problems that led to the current removal were genuinely isolated incidents, the Magistrate DENIES the state's motion for permanent custody.

> However, if the parents develop new problems, let up in their efforts to work the case plan, or are not ready to assume custody of their children by the time these cases are one year old, the Agency should immediately

file a new motion for permanent custody.  In other words, this Decision represents one last chance for the parents.

*Decision of the Magistrate*, filed April 2, 108.  [Docket Entry 72].

{¶40}  The parents had a very long history with LCJFS.  LCJFS began working with this family on June 9, 2014.  After just three months of closing their original case, LCJFS had another referral and the home was in deplorable condition.  In September 2017 when the LCJFS became involved again, some of the furniture that had been purchased was still unbuilt and some was broken.  There was trash throughout the home.  A friend of the father's was living the basement.  He was asleep with an unknown woman.  The social worker observed drug paraphernalia.   Father tested positive for methamphetamine and Mother admitted to methamphetamine use.  The parents failed to allow the social workers into the home unannounced on multiple occasions, and on the two times they did allow them in the home, there were major concerns.

{¶41}  The evidence demonstrated the successful efforts Mother had made on the case plan.  On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse.  The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to these children.  It appears that Mother cannot raise her children without the structure and the support of LCJFS.  Without the involvement of numerous outside resources, Mother simply is unable to maintain a safe and structured environment in the home.

{¶42}  In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the

case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶43}  "Reasonable efforts" have been described as the state's efforts to resolve a threat to a child's health or safety before removing the child from the home or permitting the child to return home, which follow an intervention to protect a child from abuse or neglect.  *See In re C.F.*, 113 Ohio St. 3d 73, 862 N.E. 2d 816, 2007– Ohio– 1104, at ¶ 28, *citing* Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation* (2003), 12 B.U. Pub.Int.L.J. 259, 260.  These efforts are required because of the fundamental nature of the right to parent one's children. *In re C.F.,* 2007– Ohio– 1104, at ¶ 21, 113 Ohio St. 3d 73, 862 N.E. 2d 816.

{¶44}  The Ohio Supreme Court has held that the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing.  *See In re C.F.,* 2007– Ohio– 1104, at ¶ 41; ¶ 43; See*, also,* R.C. 2151.419.  The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."  *In re C.F.*, 2007– Ohio– 1104, at ¶ 41.

A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification.  The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the

conditions that caused the child's removal. *In re Shchigelski* (Oct. 20, 2000), 11th Dist. No. 99–G–2241, 2000 Ohio App. LEXIS 4900, 2000 WL 1568388; *In re McKenzie* (Oct. 18, 1995), 9th Dist. No. 95CA0015, 1995 Ohio App. LEXIS 4618, 1995 WL 608285. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, at ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278.

*In re C.C.*, 187 Ohio App.3d 365, 2010–Ohio–780, 932 N.E.2d 360, ¶ 25 (8th Dist.).

{¶45} Based upon the foregoing, as well as the entire record in this case, the Court properly found the children could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the children's removal.

**2. The Best Interest of the Children [Mother's First Assignment of Error (Mother's Brief at 9)].**

{¶46} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as

expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶47} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶48} The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

{¶49} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts

should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988)."

{¶50}   In the present case, the trial court's decision indicates it considered the best interest factors.  Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.  The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to LCJFS.

{¶51}  Evidence was introduced that the children were scared to go home and were very angry with their parents.   1T. at 250-251.The children had an in-camera interview as well as expressed their wishes through their guardian ad litem.  The guardian ad litem recommended permanent custody be granted to LCJFS.  Therefore, this factor also weighs in favor of granting permanent custody.

{¶52}  The Magistrate noted,

> The children were first removed back in June of 2014, some 58 months before this permanent custody hearing ended.  In that 58-month period, these children have only been in the physical care and custody of their parents for 16 months.  [Child 4] is just shy of five years old.  He has been placed outside of the home or custody of a parent for almost 75% of his life.  [Child 1], the oldest child, is 12 years old, and she has spent 30% of her life in substitute care.  For this much time to have passed, and the

[Parents] still not able to assume the role of full-time parent and provide a

stable and clean home for these children is simply inexcusable.

*Magistrate's Decision,* filed June 27, 2019 at 13.

{¶53}  There was testimony to suggest that Father and Mother love the children. There was also some evidence to suggest that the children love Father and Mother. However, the record does not demonstrate that if Mother had been offered different case plan services, or additional time to complete services the result would have been different.

{¶54}  There was sufficient evidence presented at the trial for the court to form a firm belief or conviction that it was in the children's beset interest to grant LCJFS motion for permanent custody.

**Conclusion.**

{¶55}   We find the trial court did not abuse its discretion in the scheduling of the permanent custody trial.

{¶56}   We further find that the trial court's determination that Mother had had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.  We further find that the trial court's decision that permanent custody to LCJFS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶57}    Because the evidence in the record supports the trial court's judgment, we overrule Mother's two assignments of error, and affirm the decision of the Licking County Court of Common Pleas, Juvenile Court Division.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur