[Cite as *In re A.M.*, 2026-Ohio-1986.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
TUSCARAWAS COUNTY, OHIO

IN RE: A.M., DEPENDENT CHILD

| |
|---|
| Case No. 2025 AP 12 0043 |
| Opinion And Judgment Entry |
| Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 24JN00409 |
| Judgment: Affirmed |
| Date of Judgment Entry: May 28, 2026 |

BEFORE: William B. Hoffman, Robert G. Montgomery, and Kevin W. Popham, Judges

APPEARANCES: Richard D. Hixson, for Appellant-Mother; Andrew R. Floor, for Appellee-TCJFS

OPINION

*Popham, J.,*

{¶1}  Mother appeals the November 5, 2025, judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of A.M. to Tuscarawas County Job and Family Services ("TCJFS"). For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}  T.W. is the mother ("Mother") of A.M., who was born on November 16, 2010. M.M. is the father ("Father") of A.M. TCJFS initially became involved with the family in December 2023, when it filed a complaint in Case Number 23JN00362 alleging

that A.M.'s parents had left her at a residence without running water or electricity and where adults were engaging in illicit substance abuse. A.M. was placed in temporary custody of TCJFS in January 2024, and she was adjudicated as a neglected and dependent child.

**{¶3}** TCJFS initially developed a case plan for Mother that required, among other things, random drug screens. However, in June 2024, Mother requested removal from the case plan and refused to submit to random drug testing. As a result, she was removed from the case plan. On August 29, 2024, legal custody of A.M. was granted to her paternal grandmother, D.M.

**{¶4}** The present case began on December 30, 2024, when TCJFS filed a new complaint. The complaint detailed the prior case history and alleged that on December 25, 2024, A.M. had run away from D.M.'s residence and was at risk of doing so again. D.M. informed TCJFS that she no longer wished to care for A.M. The complaint further alleged that Mother could not provide a safe placement and had failed to participate in services during the prior case.

**{¶5}** TCJFS initially attempted personal service of both the summons and complaint on Mother at 615 Fair Avenue, N.W., New Philadelphia, Ohio, but service at this address was unsuccessful. Mother was personally served on January 16, 2025, at the Tuscarawas County Jail, located at 2295 Reiser Avenue SE, New Philadelphia, Ohio.

**{¶6}** On December 27, 2024, the trial court issued an emergency order of removal. Following a shelter care hearing on December 30, 2024, A.M. was again placed into temporary custody of TCJFS.

**{¶7}** On January 29, 2025, the magistrate held an adjudicatory hearing – at which Mother did not appear and was not represented by counsel. In a January 30, 2025,

judgment entry, the magistrate found the following: TCJFS had previously been involved with Mother in 2023 and 2024; Mother had been homeless during that time; Mother refused to participate in case plan services and drug screens; Mother was currently incarcerated; and Mother failed to provide adequate parental supervision. The magistrate found A.M. to be a dependent child.

**{¶8}** At a dispositional review hearing on February 19, 2025, the magistrate noted that Mother's whereabouts had previously been unknown, but that she was then incarcerated at the Tuscarawas County Jail. The magistrate found that TCJFS used reasonable efforts to eliminate the continued removal of the child from the home or to make it possible for the child to return safely home.

**{¶9}** Additional review hearings were held on April 14, 2025, and June 30, 2025. At the April hearing, the caseworker testified that Mother was not on the case plan because she refused case plan services. In judgment entries issued after both hearings, the magistrate found TCJFS used reasonable efforts to eliminate the continued removal of the child from the home or to make it possible for the child to return safely home.

**{¶10}** On July 31, 2025, TCJFS filed a motion for permanent custody of A.M. The agency requested personal service on Mother at the Tuscarawas County Jail. On October 3, 2025, the Tuscarawas County Sheriff filed a "Return of Service – Not Successful," stating there was a "failure of service upon [Mother]."

**{¶11}** On October 8, 2025, TCJFS employee Jamie Grunder filed an affidavit stating that Mother's current and last known address were unknown, and could not be determined with reasonable diligence. Grunder requested the trial court issue a judgment entry permitting service by publication.

{¶12} On October 9, 2025, the trial court granted the request - ordering notice by publication in a newspaper of general circulation in Tuscarawas County at least fourteen days before the November 4, 2025, hearing.

{¶13} An "Affidavit of Publication" filed on October 27, 2025, with the court confirmed that notice had been published in the Times-Reporter on October 17, 2025. The notice included the following: Mother's name; A.M.'s name; the case number; the juvenile court's address; notice that Mother's address was unknown; notice that a permanent custody motion had been filed; notice that the motion sought to terminate parental rights, grant permanent custody to TCJFS, and permanently divest Mother of all parental rights; the date and time of the hearing; notice that Mother was required to appear; notice of the right to counsel, including appointed counsel, if indigent; and instructions for Mother to contact the deputy clerk (at a provided phone number) to arrange for immediate appointment of counsel.

{¶14} On November 4. 2025, the trial court conducted the permanent custody hearing. At the outset, the trial judge noted that Mother had been served by publication on October 17, 2025. The following testimony was adduced at the hearing.

{¶15} Jason Hamric ("Hamric"), the ongoing caseworker in both this case and the previous case, testified that TCJFS first became involved with the family in 2023. During the prior case, A.M. had been placed with D.M., but D.M. later advised the agency that she could no longer care for the child. Hamric testified that, though Mother was initially on the case plan in the previous case, she removed herself from the case plan in May 2024 and refused to complete any random drug screens.

{¶16} Hamric detailed Father's case plan requirements in this case, and also explained that, due to her age, A.M. herself was on the case plan so that TCJFS could

provide her with referrals and resources. When asked why Mother was not on the case plan, Hamric stated that Mother refused case plan services on February 25, 2025, and she informed Hamric that she cannot take care of A.M. Hamric further testified that: Mother never visited A.M. during either the current or prior case; neither parent currently had permanent and stable housing; neither parent could adequately care for A.M.; and D.M. did not want to reunify with the child.

{¶17} Hamric confirmed that A.M. had been in agency custody for twelve out of the last twenty-two months, from January 5, 2024, through August 29, 2025, and again from December 30, 2024, through the date of the hearing. Hamric also testified that TCJFS made reasonable efforts to prevent the continued removal of the child from the home and to return the child to the home.

{¶18} Hamric testified that A.M. had completed treatment at Julia Page, a therapeutic group home and had recently been placed in a foster-to-adopt home where she was doing well. He stated that A.M. had been diagnosed with conduct disorder, unspecified-onset, other specified trauma and/or stressor-related disorder, and reactive attachment disorder. The psychologist recommended intensive trauma therapy for A.M., which TCJFS has facilitated. TCJFS made a referral so that A.M. can continue with therapeutic services while at the foster home.

{¶19} Hamric testified that A.M.'s need for a legally secure placement cannot be met without a grant of permanent custody to TCJFS. Hamric believes it is in the best interest of A.M. for permanent custody to be granted to TCJFS.

{¶20} Gerrit Denheijer ("GAL") was the guardian ad litem for A.M. both in this case and in the previous case. The GAL testified that he mailed Mother letters on February 6 and October 13, 2025, to the 615 Fair Avenue address, requesting contact information

from her and informing her of the filing of the permanent custody motion and the hearing date. Mother never responded to either letter and never contacted the GAL throughout the pendency of the case.

{¶21} The GAL testified that A.M., then fourteen years old, was capable of expressing her wishes intelligently. Although she initially hoped to reunify with Father, she later expressed a desire for permanent custody to be granted to TCJFS so that she could be adopted. A.M. understands that a grant of permanent custody to TCJFS would result in both Mother and Father losing their parental rights. The GAL testified that permanent custody was in A.M.'s best interest.

{¶22} The GAL's report filed prior to the hearing also noted that: Father failed to complete case plan services; Mother refused to engage in any case plan services; D.M. did not wish to reunify with A.M.; and A.M. was attending counseling, performing well in school, and maintaining good school attendance.

{¶23} TCJFS introduced into evidence Exhibits A1, A2, A3, and A4, which are certified copies of documents from Case Number 23JN00362.

{¶24} In a November 5, 2025, judgment entry, the trial court found that Mother had been properly served by publication on October 17, 2025, and failed to appear for the hearing. The court further found that Mother refused to participate in case plan services. The trial court made the following findings: A.M. had been in agency custody for twelve of the last twenty-two month period; A.M. could not or should not be placed with either parent within a reasonable time; despite reasonable and diligent efforts by TCJFS to remedy the problems which caused the removal of the child from the home, both parents failed continually and repeatedly to remedy the conditions causing removal; both parents demonstrated a lack of commitment towards A.M.; neither parent provided an adequate

home for A.M.; and, considering all the factors contained in R.C. 2151.414, it was in the best interest for A.M. to be placed in the permanent custody of TCJFS. The court also found that any harm caused by terminating parental rights was outweighed by the benefits of permanency.

{¶25} Mother appeals the November 5, 2025, judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶26} "I. THE TRIAL COURT VIOLATED MOTHER'S RIGHT TO DUE PROCESS BY GRANTING PERMANENT CUSTODY TO THE AGENCY WHEN MOTHER WAS NOT PROPERLY SERVED OR PROVIDED ADEQUATE NOTICE."

{¶27} "II. THE AGENCY FAILED TO MAKE REASONBLE EFFORTS TO REUNIFY THE FAMILY PRIOR TO THE TERMINATION OF PARENTAL RIGHTS AND THE TRIAL COURT ERRED WHEN IT FOUNDS THAT REASONABLE EFFORTS WERE MADE."

{¶28} "III. THE TRIAL COURT ERRED WHEN IT FOUND THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD, AS SUCH FINDING WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Permanent Custody*

{¶29} "[T]he right to raise [a child] is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶30} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be

established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

**{¶31}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal Co., Inc., v. Cleveland*, 10 Ohio St.3d 77 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

**{¶32}** R.C. 2151.414 sets forth guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice of the filing of a motion for permanent custody of a child by a public children services agency.

**{¶33}** Following the hearing, R.C. 2151.414(B)(1) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, has not been in the temporary custody of the children services agencies for twelve or more months of a consecutive twenty-two month period, and the child cannot be placed either of the child's parents within a reasonable time or should not be placed

with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶34} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child. In this case, as to Mother, the trial court made a finding pursuant to R.C. 2151.414(B)(1)(a) (reasonable time) and R.C. 2151.414(B)(1)(d) (temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period).

### Manifest Weight

{¶35} In her second and third assignments of error, Mother argues the trial court's decision was against the manifest weight of the evidence. The standard of review for manifest weight in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [or decision] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶36}** Because the finder of fact is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

I.

**{¶37}** In her first assignment of error, Mother argues that the trial court violated her due process rights because she was not properly served with notice of the permanent custody hearing.

**{¶38}** A parent's right to raise a child is a fundamental liberty interest protected by the Due Process Clause of the United States Constitution and Section 16, Article I of the Ohio Constitution. *In re Thompkins*, 2007-Ohio-5238, ¶10-14. Due process requires both notice and an opportunity to be heard. *Id*. at ¶ 13.

**{¶39}** As a general matter, R.C. Chapter 2151 adequately protects the due process rights of parents facing termination of parental rights. *In re B.C.*, 2014-Ohio-4558, ¶ 25-27.

**{¶40}** R.C. 2151.414 governs the procedure upon the filing of a permanent custody motion. The statutes mandates that, upon the filing of a permanent custody motion, "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action." R.C. 2151.414(A)(1). R.C. 2151.29 requires service to be made by delivering a copy to the person summoned or by leaving a copy at the person's usual place of residence. Service may be made by publication in a newspaper of "general circulation throughout the county" when "it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained."

R.C. 2151.29. Further, the "summons shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of publication." R.C. 2151.29. Juvenile Rule 16(A) also provides some guidelines for service by publication when the residence of a party is unknown and cannot be ascertained with reasonable diligence.

{¶41} Whether reasonable diligence has been exercised depends on the particular facts and circumstances of each case. *In re Thompkins* at ¶ 25. The Supreme Court of Ohio has defined "reasonable diligence" as "fair, proper, and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." *Id*. Further, "reasonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Id*. However, reasonable diligence does not require "heroic efforts" to ensure the notice's delivery. *Id*. at ¶ 14.

{¶42} Mother raises two arguments regarding service.

{¶43} First, Mother argues that the appellate record does not clearly establish that an affidavit supporting service by publication was filed or that proper publication occurred. The record, however, demonstrates otherwise. TCJFS filed an affidavit supporting service by publication on October 8, 2025. An Affidavit of Publication was later filed on October 27, 2025, confirming that notice was published in the Times-Reporter on October 17, 2025. An examination of the notice contained in the Affidavit of Publication demonstrates that the notice complied with R.C. 2151.414 and Juvenile Rule 16.

{¶44} Accordingly, the record supports the trial court's finding that service by publication was proper.

{¶45} Second, Mother argues that TCJFS failed to exercise reasonable diligence because it did not attempt service of the permanent custody motion at the 615 Fair Avenue address before resorting to service by publication. The record reflects that TCJFS attempted personal service at the Tuscarawas County Jail, which was Mother's last known address, and the location where she had previously been served in this case. According to the sheriff's return of unsuccessful service, the sheriff attempted to locate Mother at the jail but was unsuccessful. After that attempt failed, TCJFS filed an affidavit stating that Mother's last known address is unknown since she was no longer at the jail and that her current address is unknown and could not be ascertained with reasonable diligence.

{¶46} Although the complaint originally listed the 615 Fair Avenue address, Mother had never been successfully served there. She was served at the Tuscarawas County Jail. Hamric testified that he did not communicate with Mother at the 615 Fair Avenue address and only had contact with her at the jail while she was incarcerated. The GAL mailed two letters to the 615 Fair Avenue address, one early in the case, and one in October to notify her about the permanent custody motion and hearing, but Mother never responded or otherwise indicated that she received them. Further, the exhibits submitted during the hearing demonstrate that, during the previous case, Mother was transient and experienced periods of homelessness.

{¶47} The evidence demonstrates that Mother failed to maintain contact with TCJFS through the proceedings, failed to appear for hearings, refused case plan services, and never provided updated contact information to be agency. The affidavit filed by TCJFS provides that TCJFS had no further leads or information regarding Mother's

whereabouts. TCJFS attempted personal service at the only place Mother was known to be and the only place Mother was ever served during the pendency of this case (the Tuscarawas County Jail). It was largely through Mother's own actions that it was difficult to serve her or get her to come to court, which supports the finding of reasonable diligence by TCJFS. *In re C.H.*, 2020-Ohio-716, (3rd Dist.). Under these circumstances, TCJFS exercised reasonable diligence before resorting to service by publication.

{¶48} Mother's first assignment of error is overruled.

II.

{¶49} In her second assignment of error, Mother argues the trial court erred in finding TCFJS made reasonable efforts to reunify Mother with A.M. Specifically, Mother contends that, even though she refused case plan services, it was the duty of the agency to involve her in a case plan and contact her throughout the case.

{¶50} First, the Supreme Court of Ohio has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 2007-Ohio-1104; R.C. 2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-deposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *Id*. at ¶ 41; *In the Matter of L.J.*, 2019-Ohio-5231 (5th Dist.).

{¶51} In this case, the record reflects the magistrate made reasonable-efforts findings at various points throughout the case, as demonstrated in judgment entries after

the hearings held on December 30, 2024, February 19, April 14, and June 30, 2025. Mother did not object to any of these findings by the magistrate. Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. *Id.*

{¶52} Notwithstanding the previous findings of reasonable efforts, TCJFS also established at the permanent custody hearing that its case planning and efforts were reasonable and diligent under the circumstances. Hamric testified that he contacted Mother in February 2025, at which time she refused case plan services, and stated she could not care for A.M. Mother never requested reinstatement to the case plan and never contacted TCJFS again regarding the case. Additionally, Mother never visited A.M. during either the current case or the prior case. Mother "cannot sit idly by * * *, refusing to participate, and then fairly claim that the agency has failed [her]." *In re D.B.*, 2006-Ohio-522, ¶ 17 (9th Dist.).

{¶53} The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In the Matter of J.H.*, 2019-Ohio-5184 (5th Dist.). Mother chose to refuse services and cease contact with TCJFS. We find there is competent and credible evidence to support the trial court's determination that TCJFS' efforts were reasonable and diligent under the circumstances of the case, and the trial court did not lose its way in its finding. Mother's second assignment of error is overruled.

### III.

{¶54} The final argument Mother makes is that the trial court's determination that the best interest of the child would be served by granting permanent custody to TCJFS

was against the manifest weight of the evidence. Mother contends that the trial court lacked sufficient information regarding her relationship with A.M. and Mother's living conditions to properly evaluate the statutory best-interest factors. We disagree.

**{¶55}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 2000 WL 1700073, * 3 (5th Dist. November 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

**{¶56}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶57}** The court must consider all of the elements in R.C. 2151.414(D), as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schaefer*, 2006-Ohio-5513. The *Schaefer* Court made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by

clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than others." *Id.* at ¶ 64.

{¶58} The focus on the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶59} Here, competent and credible evidence supports the trial court's best-interest determination. Hamric testified that permanent custody was in A.M.'s best interest. Likewise, the GAL testified it is in the best interest of A.M. for permanent custody to be granted to TCJFS. A.M. had recently been placed in a foster-to-adopt home where she was thriving. She was doing well academically, attending counseling, and receiving continued therapeutic services. Hamric testified that A.M.'s need for a legally secure placement could not be achieved without permanent custody. The GAL testified that, although A.M. initially hoped to reunify with Father, she later expressed a desire to adopted through TCJFS.

{¶60} Simply because Mother refused to participate in the case plan does not mean the best interest finding was against the manifest weight of the evidence. Contrary to Mother's argument, the record contains evidence regarding Mother's relationship with A.M. Both Hamric and the GAL testified that Mother had not visited A.M. since TCJFS became involved with the family in 2023. Any lack of additional information regarding

Mother's living conditions or relationship with the child stemmed from Mother's refusal to participate in the case plan and her refusal to maintain contact with the agency.

**{¶61}** The trial court was still able to meaningfully review the statutory factors despite Mother's lack of participation. Notably, Hamric testified that Mother herself informed him that she was not able to care for A.M.

**{¶62}** We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to TCJFS is in the best interest of the child is supported by competent and credible evidence. Further, the trial court did not lose its way and create a manifest miscarriage of justice such that the decision must be reversed and a new trial ordered. Mother's third assignment of error is overruled.

**{¶63}** Based on the foregoing, Mother's assignments of error are overruled. The November 5, 2025, judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

**{¶64}** Costs to Mother, T.W.

By: Popham, J.

Hoffman, P.J. and

Montgomery, J., concur