[Cite as *In re S.L.*, 2021-Ohio-2377.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: S.L. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021 CA 00027 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2019JCV00703

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     July 9, 2021

APPEARANCES:

For Appellee

BRANDON WALTENBAUCH
SCDJFS
221 3rd Street
Canton, OH 44702

For Appellant

DONOVAN HILL
122 Market Avenue North
Suite 101
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant M.L. appeals from the February 8, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of S.L. to the Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2} M.L. is the father ("Father") of S.L., born July 14, 2019. C.W. is the mother ("Mother") of the child.

{¶3} On January 23, 2019, SCDJFS filed a complaint of dependency and/or neglect with regards to S.L. The complaint alleged, in part, the following: both parents were cognitively delayed and were struggling to care for the newborn child; both parents were residing in a homeless shelter and lacked supplies for the baby; both parents had to be reminded to feed the baby; neither parent could verbalize a feeding schedule for the baby or remember when the child last ate; both parents had mental health diagnoses; shelter staff reported parents' room had ants and flies around the sink and they had to remind both parents to take showers; the child was sunburned and Mother could not remember how long she was outside with the child and reported that Father would not let her go inside with the baby; and, despite a safety plan established with the agency for supervision of the child by paternal relatives, the supervisors reported to SCDJFS that they could not supervise the parents at all times and could not supervise them long-term.

{¶4} The trial court appointed Dawn Kinsey ("Kinsey") as guardian ad litem ("GAL") for the child on August 8, 2019. The trial court held a hearing on October 10, 2019. The trial court found S.L. to be dependent and placed the child into the temporary

custody of SCDJFS. The magistrate held a further dispositional hearing on January 16, 2020. SCDJFS filed a motion to extend temporary custody on May 26, 2020; the trial court granted the motion on August 5, 2020.

{¶5} SCDJFS filed a motion for permanent custody on December 8, 2020. The trial court conducted a trial on the motion on February 3, 2021. Mother stipulated to a granting of permanent custody of S.L. to SCDJFS.

{¶6} Sue Snyder ("Snyder"), the caseworker for S.L, was assigned to the case in August of 2019. Snyder confirmed that S.L. was placed into the temporary custody of SCDJFS on October 10, 2019, and has remained in the temporary custody of SCDJFS since that time. This is more than twelve of the last twenty-two months. Father's last visit with S.L. was on October 5, 2020; thus, Father had no contact with the child for a period in excess of ninety days. Father showed up at the agency in December requesting an additional visit with S.L., but only if the visit included Mother. Snyder informed Father he would have to visit S.L. himself, and Father inquired no further about visiting S.L.

{¶7} As to Father's case plan, Snyder stated Father was to: complete an assessment at CommQuest and follow all recommendations; complete an assessment at Lighthouse and complete all recommendations; and maintain stable housing.

{¶8} Father completed the parenting evaluation at Lighthouse Family Center. The Lighthouse assessment listed recommendations for ongoing psychiatric care and some medication compliance. It also provided that if Father and Mother remained in a relationship, reunification should not occur.

{¶9} Snyder testified that when the case began, Father was living in a shelter. However, the staff asked him to leave after Father stated he was going to burn the place

down.  He then was living in a makeshift shelter outdoors at an abandoned grocery store. Snyder helped him secure housing at a boarding house.  Snyder described the boarding house as "rough" and not appropriate housing for a child.

{¶10}  Snyder confirmed Father did complete an assessment at CommQuest. However, he was unsuccessfully discharged from the program because he missed appointments.  After Father was arrested, he did return to CommQuest to attend some AA meetings.  CommQuest issued a report in January of 2021 stating Father was discharged unsuccessfully from the program because he had not continued with treatment.

{¶11}  Snyder does not believe Father can meet the needs of S.L. because of his severe mental health conditions.  Snyder testified Father cannot parent S.L. on a daily basis, as his own needs can often overwhelm him, even without an infant requiring total care.  Snyder attempted to help Father with case plan compliance by meeting with him, providing bus passes, and attempting to meet with him away from the boarding house.

{¶12}  Snyder also testified at the best interest portion of the trial.  Snyder stated that S.L. is receiving ongoing physical therapy and occupational therapy.  Exercises must be done every day at home and the foster mother does this daily.  S.L. has been in the same foster home since her placement.  S.L. is very bonded to the family.  Snyder believes it is in the best interest of S.L. for the court to grant permanent custody to SCDJFS.

{¶13}  Snyder observed Father's visits with S.L.  He tried to be loving with S.L. There were times when he did not want to accept the prompts such as supporting the

child's head.  Father's last visit was on October 5, 2020.  At this visit, Father was agitated; Snyder believes this is because he found out he was going to be arrested.

{¶14}  Snyder does not believe S.L. is bonded to Father.  Snyder testified that the benefit of permanency outweighs the harm of severing any bond that does exist.

{¶15}  Dr. Aimee Thomas ("Thomas") is a psychologist at Lighthouse Family Center.   Thomas first met Father when he accompanied Mother to her parenting evaluation.  During this interaction, Father was very agitated and upset.  With regard to his own parenting evaluation, Thomas testified Father had difficulties with reading, so that hindered his ability to complete the standard tests.  However, Thomas read the questions to him.   Thomas stated Father presented with moderate intellectual disabilities, specifically as it relates to problem solving, judgment, abstract learning, and analytical skills.  Father is functioning at the level of a nine-year old with respect to verbal skills, and a five-year old with respect to non-verbal skills.

{¶16}  Thomas testified that Father could not tell time or do basic math.  Thus, he needs a payee.  In Thomas' opinion, Father's intellectual ability impacts his ability to take care of himself and a child.

{¶17}  Thomas completed a personality test on Father.  The results indicated he was inclined to misread situations, which leads him to be mistrustful and paranoid in his interactions with others.  Father reported to Thomas that he has difficulty interacting with other, including family members.  Father also reported he has mood swings and anger management problems.  Father told Thomas he had previously been diagnosed with bi-polar disorder and was prescribed medication.  Father informed Thomas that he sees and hears dead people.  Thomas concurred with the bi-polar diagnosis, and also diagnosed

Father with psychosis. Thomas stated Father does not have basic parenting knowledge. For example, when asked how long a child should be placed in time out, he stated ten hours.

{¶18} Thomas identified Exhibit 1 as the parenting evaluation report she completed on Father. Though Thomas did not believe Father was likely to be able to comply with her recommendations due to his severe intellectual disability and mental health diagnosis, she made several recommendations in her report. These recommendations were: obtain and maintain comprehensive mental health services, including psychiatric services; consistently take medication; submit random urine screens; participate in services for anger management, and participate in Goodwill Parenting.

{¶19} Based upon the results of her evaluation, Thomas has concerns about Father's ability to safely parent a child absent a very strong support system that could offer constant oversight.

{¶20} Kinsey filed a report recommending permanent custody of the child be granted to SCDJFS. She noted that S.L. is doing well in the foster home, and foster mom works with S.L. on all of the child's therapy needs. Kinsey does not believe S.L. would be safe with Father.

{¶21} The trial court issued a judgment entry on February 8, 2021, terminating Father's parental rights with regards to S.L., and granting permanent custody of the child to SCDJFS. Simultaneously, the trial court issued extensive findings of fact and conclusions of law.

{¶22} The trial court issued the following decision as to permanency and placement: Father abandoned S.L. by failing to maintain contact with or visit with the child for more than ninety days; S.L. has been in the custody of the agency for a period of greater than twelve months of a consecutive twenty-two-month period; and S.L. cannot be placed with either parent within a reasonable time, nor should the child be placed with them. As to the best interest determination, the trial court set forth the relevant statutory factors, and found: the harm caused by severing any bond with Father is outweighed by the benefits of permanence in the child's life, and it is in the best interest of S.L. to grant permanent custody to SCDFJS.

{¶23} Father appeals the February 8, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶24} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶25} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Permanent Custody*

{¶26} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).  An award of permanent custody must be based on clear and convincing evidence.  R.C. 2151.414(B)(1).

{¶27}  Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).  "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.  If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶28}  Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact.  *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶29}  R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶30}  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶32} In his first assignment of error, Father argues the finding that the child cannot or should not be placed with Father within a reasonable time was not proven by clear and convincing evidence.

{¶33} We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the child has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Snyder testified the child was placed into the temporary custody of SCDJFS in October of 2019 and was continuously in the temporary custody of the agency until February 3, 2021, the date of

the trial. Thus, the child has been in the custody of the agency for more than twelve out of the last twenty-two months.

{¶34} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶35} Additionally, in this case, the trial court found, by clear and convincing evidence that Father abandoned the child pursuant to R.C. 2151.414(B)(1)(b). Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parties of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." We find there is competent and credible evidence to support this determination. Snyder testified Father's last visit with S.L. was on October 5, 2020. The trial was held on February 3, 2021, a time period in excess of ninety days after his last visit.

{¶36} While Father contends SCDJFS refused to set up visits when he asked for them, the evidence does not support this conclusion. Snyder testified that one time in December of 2020, Father came to the agency, requesting a visit with S.L., but he wanted the visit to also be with Mother. When Snyder told Father he would have to visit S.L. without Mother, he no longer inquired about visiting with S.L. and was focused instead on his relationship with Mother. Thus, Father was not denied visitation; he chose not to visit

since Mother was not going to be there.  Father cites to no other instances where he requested, and was denied, visitation with S.L.

{¶37}  A trial court's finding of abandonment under R.C. 2151.414(B)(1)(b) will satisfy the first prong of the permanent custody test, independent of a finding under R.C. 2151.414(B)(1)(a), allowing the court to move on to the second prong of considering whether the grant of permanent custody to the agency is in the best interest of the child. *In re A.M.*, 5th Dist. Stark No. 2013 CA 00113, 2013-Ohio-4152.

{¶38}  Because Father has not challenged the twelve of twenty-two-month finding, we would not need to address the merits of this assignment of error.  However, even if we consider Father's argument, the trial court did not err in determining the child cannot be placed with Father at this time or within a reasonable period of time.  Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination.  The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶39}  A review of the record supports the trial court's conclusion that the child cannot be placed with Father within a reasonable time.  Father was unsuccessfully discharged from CommQuest and has not engaged in mental health treatment, despite his significant mental health diagnosis.  He was arrested twice during the pendency of this case, and has been living in a boarding house that is not an appropriate housing option for a child.  Snyder testified Father cannot parent S.L. on a daily basis, as his own needs often overwhelm him.  Thomas testified Father's cognitive ability negatively affects

his ability to parent a child and care for himself. Thomas stated Father has bipolar disorder and psychosis.

{¶40} Father's primary argument is that SCDJFS did not make "reasonable case planning and diligent efforts" to assist Father in remedying the problems. We disagree.

{¶41} First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231. In this case, the trial court previously made findings of reasonable efforts on July 24, 2019, October 10, 2019, January 16, 2020, and December 17, 2020.

{¶42} Further, we find there is competent and credible evidence to confirm that SCDJFS made reasonable efforts to assist Father in eliminating the need for the continued removal of the child. Snyder testified she provided Father with bus passes, spoke with him about his case plan objectives, and met with him approximately two dozen times in person. Snyder made attempts to visit with Father outside, but he did not attend most of these sessions. When Father's payee would not help him secure new housing,

Snyder helped Father get his payee changed to the Friendship Center so he could secure a room at the boarding house. The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstance of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184; *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458.

{¶43} We find there is competent and credible evidence to support the trial court's finding that the child cannot be placed with Father within a reasonable amount of time. Father's first assignment of error is overruled.

II.

{¶44} In his second assignment of error, Father contends the trial court's determination that the best interest of the child would be served by the granting of permanent custody to SCDJFS was against the manifest weight and sufficiency of the evidence. Father cites the testimony that he was "active" with S.L. during visits.

{¶45} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶46} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with

the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶47} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* at 111.

{¶48} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315.

{¶49} We find the trial court did not err in finding that granting permanent custody to SCDJFS was in the best interest of S.L.

{¶50} Snyder testified S.L. is receiving ongoing physical and occupational therapy, with many of the exercises being done at home with her foster family. S.L. has been in the same foster home since her initial placement, and is very bonded to the foster family. Snyder believes it is in the best interest of S.L. for the court to grant permanent custody to SCDJFS. Snyder testified the benefit of permanency outweighs the harm of severing any minimal bond that exists between S.L. and Father.

{¶51} Similarly, Kinsey stated in her report that permanent custody to SCDJFS is in the best interest of S.L. She noted S.L. is doing well in the foster home, and foster mom works with S.L. on all of S.L.'s therapy needs. Kinsey does not believe S.L. would be safe with Father.

{¶52} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCDJFS is in the best interest of the child is supported by competent and credible evidence. Father's second assignment of error is overruled.

{¶53} Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of S.L. to SCDJFS.

{¶54} Father's assignments of error are overruled and the February 8, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur