[Cite as *In re D.H.*, 2021-Ohio-3984.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF D.H. | : | JUDGES: |
|  | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021 CA 0053 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of
                              Common Pleas, Juvenile Division, Case
                              No. 2019 DEP 00200

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       November 8, 2021

APPEARANCES:

For Appellee                          For Appellant

CHRISTOPHER ZUERCHER                  BYRON CORLEY
Richland County Children's Services   3 North Main Street, Ste. 602
731 Scholl, Ste. 202                  Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, J.,*

{¶1} Father appeals the June 24, 2021 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of D.H. to the Richland County Children Services Board ("RCCS").

*Facts & Procedural History*

{¶2} F.H. is the Father ("Father") of D.H., who was born on July 24, 2019. M.A. is the Mother ("Mother") of D.H.

{¶3} On September 18, 2019, RCCS facilitated the voluntary placement of D.H. with Mother's oldest child, J.A., and his wife.

{¶4} On October 3, 2019, RCCS filed a complaint alleging D.H. was a dependent and abused child. The complaint alleged, in part: D.H. tested positive for cocaine at birth, Father has a history of drug use, Father has no stable residence or the means to assume care of D.H., and Mother and Father have a history of domestic violence. The complaint requested a disposition of temporary custody to J.A. and his wife, with a grant of protective supervision to RCCS.

{¶5} The trial court held an adjudicatory hearing in November of 2019. In a December 13, 2019 judgment entry, the trial court found D.H. was a dependent child. In a February 7, 2020 judgment entry, the trial court placed D.H. in the temporary custody of RCCS. RCCS maintained the placement of the child with J.A. and his wife while they completed foster parent certification.

{¶6} The trial court adopted and approved the case plan in February of 2020. The presenting problems for Father included: history of domestic violence, economic struggles, a history of substance abuse, and unknown parenting skills. Pursuant to the

case plan, Father was required to: submit to random drug testing, complete a substance abuse treatment program and be able to show sobriety for at least six months, participate in parenting classes, utilize his money appropriately to care for D.H., and complete a mental health assessment and follow all recommendations.

{¶7} On August 31, 2020, RCCS filed a motion to extend temporary custody to RCCS. The trial court granted the motion on October 7, 2020.

{¶8} RCCS filed a motion for permanent custody of D.H. on March 1, 2021. Father filed a motion for visitation on April 29, 2021.

{¶9} The magistrate held a trial on the motion for permanent custody and Father's motion for visitation on June 14, 2021.

{¶10} J.A. is the older brother of D.H., and is her current foster parent. He testified that his family, including his children, are very bonded to D.H. He and his wife work different shifts so that one of them can always be home with the children. D.H. is doing well developmentally, and is very smart. Members of her extended family sometimes come to visit with D.H. J.A. and his wife finished the foster program specifically so they could apply to adopt D.H.

{¶11} On cross-examination, J.A. testified he did not think legal custody was a good idea because, if D.H. was involved with either Mother or Father, she would be exposed to drugs.

{¶12} Shannon Thompson ("Thompson") has been D.H.'s caseworker since D.H.'s birth in 2019. D.H. was originally removed from the home because she tested positive for cocaine at birth. There were also concerns because Mother and Father moved around a lot, lacked stability, and there was a history of both substance abuse and

domestic violence issues. D.H.'s is Mother's tenth child; all of her children have been removed from her custody. Mother and Father have been together for five years; however, they are each still married to other people.

{¶13} At the beginning of the case in July of 2019, D.H. was placed with Mother's parents. That became unworkable when Mother's father died. D.H. was then placed with J.A. and his family in September of 2019. D.H. has been in the temporary custody of RCCS for more than twelve months of a consecutive twenty-two-month period.

{¶14} Case plan objectives for Father included: complete a substance abuse treatment program; AOD counseling; submit to random drug testing; demonstrate sobriety for at least six months; complete a mental health assessment and follow all recommendations; demonstrate general economic and residential stability; and complete parenting classes. Father has not substantially complied with his case plan. Father attempted to start counseling, but was discharged for non-compliance for failing to appear for appointments. This happened multiple times. Thompson testified Father thought one counselor did not want to work with him, so they tried different counselors. Father is currently in counseling; however, this was part of his probation for a domestic violence conviction against Mother.

{¶15} Father recently gave Thompson the names of people he is working with at Catalyst, a counseling service. Thompson requested records from them, but had not received them at the time of the hearing.

{¶16} Father consistently failed his drug tests, testing positive mostly for marijuana. This is a concern for the agency due to the history and continued drug use of Father, and concern about Father being impaired while parenting. Father and Mother are

both living with Mother's mother, despite the fact that there is a no-contact order between them. That home is not appropriate for a child because the house is filled with junk, trash, and cockroaches. There is currently no electricity or running water in the home. Thus, Father does not have an adequate permanent home for the child.

{¶17} Father last visited D.H. on August 28, 2020. The visits were suspended after September of 2020 because Thompson could not locate Father. This was the second time visits had been suspended. Two months prior to the hearing, after RCCS filed their motion for permanent custody, Father asked to resume visits, and Thompson was working on resuming visitation. However, there are certain requirements that must be met to reinstitute visitation. The issue with starting the visits was that Father was required to have a clean drug test before the agency would schedule visitation. Father only recently was able to return a clean drug screen. Throughout the case, Father never made sufficient progress on his case plan to justify an expansion beyond supervised visitation at the agency.

{¶18} When asked on cross-examination about whether Father would now be allowed to visit, Thompson testified she needed to speak with Father's probation officer because Father told Thompson that he relapsed a month ago on cocaine. Thus, Thompson needs to contact the probation officer to see the results of the drug test administered by the probation officer.

{¶19} D.H. does not know Father or Mother as her parents. Thompson has seen D.H. with her foster family. She is very bonded to them.

{¶20} Thompson does not believe legal custody, as opposed to permanent custody, is in the best interest of D.H. Thompson believes that permanent custody to

RCCS is in the best interest of D.H., and does not believe reunification with Father could occur in the next six months.

{¶21} Father has been on probation for a domestic violence conviction since February 18, 2021. He is in mental health counseling and a domestic violence group. These are court-ordered through his probation. Father testified he is currently in drug and alcohol counseling that is not court-ordered. Father admitted he had a relapse with cocaine approximately two months prior to the hearing. His probation officer gave him a warning and he has not tested positive since. Father objects to permanent custody being granted to RCCS because he wants to take care of his daughter. Father also does not like D.H. living with J.A. because J.A. does not like Father due to his domestic violence history against Mother.

{¶22} Father stated he now works doing odd jobs such as lawn mowing, snow plowing, and cleaning. He "eventually" will be moving out of D.H.'s maternal grandmother's home. Father believes he will be in a position in the next two to four months to provide a home for D.H. Father has not yet looked into parenting classes, but he plans to.

{¶23} On cross-examination, Father testified he has approximately three months left in his court-ordered counseling program and six months left in his court-ordered domestic violence group. Father missed approximately seven months of visits and testified he missed these visits because he lost his phone, he needed to visit his sick mother, and did not have transportation. Father has multiple previous domestic violence convictions, but Mother was not the victim in any of them except the most recent one.

{¶24} Father receives benefits from SSI and SSDI. He receives these funds due to his diagnoses of bipolar disorder and schizophrenia. Father is not on medication for either of these disorders.

{¶25} The magistrate also admitted into evidence the CASA/GAL report filed on June 7, 2021 by guardian ad litem JoAnn Frantz. The GAL recommended that D.H. be placed into the permanent custody of RCCS. The GAL went through each of the best interest factors in her report. The GAL stated that while D.H. is too young to express her wishes and concerns, she is very happy and content in her foster home. As to relationships, Father has not seen D.H. in over a year, was often a no-show at visits, and has shown a lack of commitment to D.H. J.A. and his wife think of and treat D.H. as their daughter. Father resides with Mother's mother in a bug-infested home that has no electricity. J.A. and his wife live with her two children in a three-bedroom apartment. Father is working "under the table." J.A. and his wife provide a stable and loving home for the child and have completed foster parent classes.

{¶26} The GAL stated that D.H. cannot be reunited with either parent with a reasonable amount of time or should not be reunited with them because neither parent remedied the conditions that first existed when the child was removed from the home. Father does not have stable housing and does not have consistent employment. Father was charged with assault in 2017, OMV while under suspension in 2020, and domestic violence in February of 2021.

{¶27} The magistrate issued a judgment entry granting RCCS's motion for permanent custody on June 24, 2021.

{¶28} The magistrate determined that D.H. had been in the temporary custody of RCCS for more than twelve months of a consecutive twenty-two-month period when RCCS filed its motion for permanent custody on March 1, 2021.

{¶29} The magistrate found that, in the alternative, D.H. cannot and should not be placed with either of her parents within a reasonable period of time, and listed the following reasons for its determination: both parents have failed continuously and repeatedly to substantially remedy the conditions causing such placement as they both have failed to comply with the provisions of their case plans. Specifically, with regards to Father, he does not have a current residence that is suitable or appropriate for a child; and he has not successfully completed a mental health assessment, a substance abuse treatment program, or a parenting class. Further, Father has failed to support, visit, or communicate with D.H. when able to do so, and has also shown an unwillingness to provide an adequate permanent home for D.H. The trial court found that Father only recently elected to confront his substance abuse issues, due in no small part to his current probation terms, which require him to participate in a domestic violence counseling program. Further, Father and Mother chose to travel a significant distance to stay with Father's mother. Father has never contributed to the financial support of D.H.

{¶30} The magistrate then did a detailed analysis of the best interest factors contained in R.C. 2151.414(D), and concluded it was in the best interest of D.H. for permanent custody to be granted to RCCS. The magistrate analyzed the factors as follows: (a) D.H. has not had contact with either parent for many months and does not know them to be her parents; D.H. has been placed with her adult sibling and his family since she was two months old; D.H. is bonded to the foster family, and has stability with

them; her foster parents want to adopt D.H., (b) D.H. is too young to understand, but the opinion of the GAL on her behalf clearly communicates a wish to remain in the home of the foster parents, (c) D.H. has been placed with the current foster family since September 18, 2019, first under a voluntary relative placement, and then under a foster parent placement, and (d) permanent custody is the most legally secure placement for D.H., and she has no bond with either Father or Mother.

{¶31} The magistrate also found RCCS made reasonable efforts to eliminate the continued removal of the child from the child's home and return the child to the home by providing reasonable and relevant case planning and management.

{¶32} The trial court issued a judgment entry on June 24, 2021 approving and adopting the magistrate's decision.

{¶33} Father appeals the June 24, 2021 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶34} "I. THE TRIAL COURT DID NOT HAVE RELEVANT, COMPETENT, AND CREDIBLE EVIDENCE TO FIND THAT D.H. SHOULD NOT BE PLACED WITH FATHER WITHIN A REASONABLE TIME.

{¶35} "II. THE TRIER OF FACT ABUSED ITS DISCRETION BY NOT EXTENDING THE CASE FOR SIX MONTHS TO ALLOW FATHER TO REMEDY THE PROBLEMS PREMISED UPON D.H.'S REMOVAL."

*Permanent Custody*

{¶36} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S.

645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶37} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶38} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶39} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

{¶40} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶41} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶42} In his first assignment of error, Father makes two separate arguments. First, he contends the elements of R.C. 2151.414(B)(1)(a) and (E) were not met because the finding that D.H. could not or should not be placed with Father within a reasonable time was not proven by clear and convincing evidence.

{¶43} We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the child has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Thompson

testified that D.H. has been in the temporary custody of RCCS for more than twelve months of a consecutive twenty-two-month period.

{¶44} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶45} Because Father has not challenged the twelve of twenty-two-month finding, we would not need to address the merits of Father's claim with regards to the trial court's determination that D.H. could not or should not be placed with Father within a reasonable time.

{¶46} However, even if we consider Father's argument, we find the trial court did not commit error in determining the child cannot be placed with Father at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶47} Though Father contends D.H. could have been placed with him "in a few months," the evidence at trial does not support his contention. Rather, a review of the record supports the trial court's conclusion that the child cannot be placed with Father within a reasonable time.

{¶48} The GAL stated that D.H. cannot be reunited with Father within a reasonable amount of time or should not be reunited with him because he did not remedy the conditions that first existed when D.H. was removed from the home. Specifically, Father does not have stable housing, does not have consistent employment, and Father has not seen D.H. in over a year, as he was often a no-show for visits.

{¶49} Thompson testified Father has not substantially completed his case plan. He frequently failed drug tests, and has not been able to demonstrate sobriety for at least six months. Father has never attempted to begin parenting classes. Though he recently started to attend some counseling, this only occurred after this was a requirement of his probation, and after he was discharged multiple times from counseling previously in the case. Father himself testified he still has approximately six months left of his court-ordered counseling.

{¶50} D.H. has never lived with Father, as he has never progressed past supervised visitation at the agency during the case, which had been pending for almost two years at the time of the hearing. This is primarily due to Father's inadequate home conditions, continued drug use of Father, and his inability to complete counseling or attend parenting classes.

{¶51} Father also contends the "reasonable efforts" determination was against the weight of the evidence because Thompson failed to speak with Father's probation officer, and because Thompson was still waiting on records from Father's counseling providers at the time of the hearing. Father contends this counseling information and information from his probation officer was necessary to decide whether he remedied the conditions

leading to removal, and asserts that this information would demonstrate he has remedied the conditions leading to removal.

{¶52} We disagree with Father. First, as to Father's probation officer, Thompson stated she needed to confirm with the probation officer whether Father tested positive for cocaine two months prior to the hearing. However, Father himself testified he relapsed and tested positive for cocaine two months prior to the hearing. This bolsters Thompson's testimony that Father has not remedied the conditions leading to D.H.'s removal, as he still tested positive for drugs more than sixteen months into the case.

{¶53} As to the records from Father's counselors, Thompson's testimony was that she was waiting for the specific information about the counseling programs. However, this did not change her testimony that Father only started counseling when it was required by the terms and conditions of his probation. Further, even if Father completed counseling, he still has not completed other portions of his case plan. Additionally, the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604.

{¶54} Father also argues RCCS did not make reasonable efforts to assist Father in remedying the problems leading to the removal of D.H.

{¶55} First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to

reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231. In this case, the record reflects that the juvenile court made reasonable-efforts findings at various points throughout the case for the child, as demonstrated in judgment entries dated February 13, 2020, October 7, 2020, and March 5, 2021. Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. *Id.*

{¶56} In its June 24, 2021 judgment entry, the trial court found RCCS made reasonable efforts to eliminate the continued removal of the child from the child's home and return the child to the home.

{¶57} Father contends the efforts of RCCS were not reasonable because they did not facilitate visitation for Father for approximately three months after he asked to resume visitation. However, Thompson gave a detailed explanation as to why these visits did not begin. As explained by Thompson, Father stopped showing up for visits after August of 2020, and Thompson could not locate Father despite her efforts to do so. Because this was the second time Father had stopped visits, RCCS had certain requirements for visits to resume; specifically, Father had to submit a clean drug test. Father admitted he tested positive for cocaine two months prior to the hearing. Thus, the delay in re-starting visits was not due to the lack of reasonable efforts by RCCS, but due to Father's lack of sobriety.

{¶58} The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184. We find there is competent and credible evidence to support the trial court's determination that RCCS' efforts were reasonable and diligent under the circumstances of the case.

{¶59} Father's first assignment of error is overruled.

II.

*Six-Month Extension*

{¶60} In his second assignment of error, Father makes two distinct arguments. His first argument is that the trial court committed error in not extending temporary custody by six months, as, per Father's testimony, he will be able to finish counseling and have suitable housing in that amount of time.

{¶61} A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is a reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab,* 5th Dist. Tuscarawas Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008-Ohio-1638.

{¶62} As discussed below, the evidence before the trial court supports the conclusion that an extension of temporary custody was not in D.H.'s best interest, but, rather, D.H.'s interests were best served by an award of permanent custody to RCCS.

{¶63} Further, Thompson testified Father has not substantially complied with his case plan. When the case started, Father was discharged from counseling for non-compliance multiple times. He only started counseling more than sixteen months into the case when it was required pursuant to the terms of his probation. Father consistently failed drugs tests and, as recently as two months prior to the hearing, tested positive for cocaine. Father currently lives in a home that is not suitable for a child. Father last visited with D.H. in August of 2020. While Father attempted to resume visitation approximately two months before the hearing, he was unable to pass a drug test until right before the hearing. Throughout the case, Father never made sufficient progress on his case plan to justify an expansion beyond supervised visitation at the agency.

{¶64} Finally, there is not reasonable cause to believe D.H. will be reunified with Father or otherwise be permanently be placed with him in six months. Despite Father's testimony, Thompson testified that she does not believe reunification could occur in the next six months.

{¶65} We find the trial court did not commit error in not extending temporary custody by six months.

*Best Interest*

{¶66} Father also argues the trial court's determination that the best interest of the child would be served by the granting of permanent custody to RCCS was against the manifest weight and sufficiency of the evidence. Father cites to the testimony that he is

in counseling, will soon have suitable housing, and Father wants to take care of his daughter.

{¶67} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶68} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶69} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an

agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

{¶70} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶71} We find the trial court did not commit error in finding that granting permanent custody to RCCS was in the best interest of D.H.

{¶72} Father consistently failed drugs tests, most recently testing positive for cocaine, which prolonged his resumption of visitation with D.H. after he failed to show up to visits for approximately seven months. Thompson stated the home where Father lives is filled with trash, has cockroaches, and has no electricity or running water. Father has several significant mental health diagnoses, but is not on mediation or in counseling for them. D.H. does not know Father as her Father, and is not bonded to her.

{¶73} Thompson testified it is in the best interest of D.H. for permanent custody to be granted to RCCS. The GAL also stated it is in the best interest of D.H. to be placed into the permanent custody of RCCS, and went through each of the best interest factors in her report and explained how she came to her recommendation.

{¶74} J.A. testified his family is very bonded to D.H., and that D.H. is doing well developmentally. Thompson stated D.H. is very bonded to her foster family. The GAL stated D.H. is very happy and content in her foster home, and deserves permanency; further, the foster family provides a stable and loving home for D.H.

{¶75} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to RCCS is in the best interest of the child is supported by competent and credible evidence.

{¶76} Based on the foregoing, Father's assignments of error are overruled.

{¶77} The June 24, 2021 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, J,

Baldwin, P.J., and

Delaney, J., concur