[Cite as *In re O.W.*, 2022-Ohio-42.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                              |   |                               |
|------------------------------|---|-------------------------------|
| IN THE MATTER OF: O.W.       | : | **JUDGES:**                   |
|                              | : | Hon. W. Scott Gwin, P.J.      |
|                              | : | Hon. William B. Hoffman, J.   |
|                              | : | Hon. Earle E. Wise, J.        |
|                              | : |                               |
|                              | : |                               |
|                              | : | Case No. 2021 CA 00091        |
|                              | : |                               |
|                              | : |                               |
|                              | : | <u>OPINION</u>                |


CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of
                            Common Pleas, Juvenile Division, Case
                            No. 2020JCV00144


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     January 10, 2022


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

BRANDON WALTENBAUGH                 TY GRAHAM
402 2nd Street S.E.                 4450 Belden Village Street N.W., Ste. 703
Canton, OH  44702                   Canton, OH  44718

*Gwin, P.J.*

{¶1}   Mother appeals the July 19, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of O.W. to Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2}   S.W. is the Mother ("Mother") of O.W., who was born on September 26, 2016.

{¶3}   On February 14, 2020, SCDJFS filed a complaint alleging O.W. was a dependent and neglected child.  The complaint alleged, in part:  Mother has a significant history with SCDJFS dating back to 2011 due to concerns about mental health, substance abuse, and related criminal activity; Mother has lost custody of three older children; O.W. was removed from Mother's custody in 2017 and while she did not comply with her case plan for one year, she eventually substantially complied with her case plan and O.W. was returned to her custody in May of 2019; Mother's car was stopped in December of 2019 for marijuana use while O.W. was in the car; and SCDJFS made numerous attempts to contact Mother with no response.

{¶4}   O.W. was placed under the protective supervision of SCJDFS on February 18, 2020.  Alexandra Firestone ("Firestone") was appointed as guardian ad litem for O.W. on February 21, 2020.  On February 26, 2020, SCDJFS filed an ex parte motion for temporary custody after Mother tested positive for amphetamines, methamphetamines, and oxycodone.  The trial court granted the motion.  After a hearing on May 12, 2020, the trial court found O.W. to be a dependent child.

{¶5} SCDJFS filed a motion for permanent custody of O.W. on January 5, 2021. The trial court set the matter for trial on February 18, 2021. On February 18, 2021, Mother filed a motion to continue due to potential exposure to COVID-19. The trial court granted the motion and continued the trial until April 21, 2021. On April 21, 2021, Mother filed a second motion to continue, stating she was feeling ill. The trial court continued the trial until April 22, 2021 at 1:00 p.m., and offered Mother the option of appearing by phone or presenting proof of a COVID-19 diagnosis by the end of the day.

{¶6} At the beginning of the trial on April 22, 2021, counsel for Mother stated she had spoken to Mother and Mother reported she was on her way from Alliance. Counsel for Mother attempted to call Mother back at the same phone number, but Mother did not answer the phone, and did not appear for the trial. Counsel again contacted Mother after the first portion of the hearing. Mother reported she was approximately ten minutes away. The court waited thirty minutes before hearing testimony in the best interest portion of the proceeding. Mother did not appear.

{¶7} Wanda Pounds ("Pounds") is the ongoing caseworker assigned to O.W.'s case. Pounds confirmed O.W. was placed into the temporary custody of the agency on May 12, 2020 and that, from May 12, 2020 to January 5, 2021, O.W. was in the temporary custody of SCDJFS. Further, in Case Number 2017 JCV 00679, O.W. was in the temporary custody of SCDJFS from July 17, 2017 to May 16, 2019, a period of nineteen months. Accordingly, O.W. has been in the custody of SCDJFS for more than twelve out of the last twenty-two months.

{¶8} Pounds testified that Mother has five children, and had a substantial history with the agency for approximately ten years. None of Mother's five children are in

Mother's custody.  Mother had a child in November of 2020 who is currently in agency custody.  Further, one of her older children is in the permanent custody of SCJDFS. Mother's two other older children are in the legal custody of relatives.

{¶9}   Pounds stated the concerns with Mother throughout the years have been issues with substance abuse, mental health, and criminal history.  Pounds developed a case plan to address these issues.  The case plan included the following:  participate in a parenting assessment; contact a mental health agency and follow through with counseling and medication recommendations; participate in substance abuse treatment; and complete drug screens as requested by SCJDFS.

{¶10}  Pounds testified that Mother has not substantially complied with her case plan objectives.  While she did complete a parenting evaluation and assessments, she did not complete the remainder of her case plan.  Mother requested to participate in mental health treatment through Ohio Guidestone.  Mother initiated services with them and completed an assessment; however, she did not participate with her case manager or therapist.

{¶11}  Mother is not actively engaged in substance abuse treatment.  Mother completed a substance abuse assessment, but never followed up with any recommendations.  Mother was terminated from CommQuest in September of 2020 for non-compliance.  Approximately one month prior to trial, Pounds asked Mother to complete a drug screen.  Mother refused and wanted to complete the drug screen at CommQuest.  Pounds permitted Mother to complete it at CommQuest, but told Mother it had to be done that day.  Mother never went to CommQuest to complete the drug screen.

{¶12} Pounds testified to Mother's criminal history. On February 18, 2021 (possessing drug abuse instruments), February 21, 2021 (possession of fentanyl related compound, possession of drug abuse instruments, possession of drug paraphernalia), and February 28th, 2021 (possessing drug abuse instruments, illegal use or possession of drug paraphernalia), Mother was cited by the Alliance Police Department for separate drug-related charges. February 18, 2021 was the date previously scheduled for the trial in this case. Mother requested a continuance, stating she was ill on February 18, 2021. Mother pled no-contest to the February 18, 2021 citation on April 14, 2021. The balance of the charges remained pending as of the date of the trial in this case.

{¶13} Pounds also testified to the efforts she made to assist Mother in completing her case plan. These efforts included: meeting with Mother regularly; giving her the case plan in writing; going over the case plan with Mother multiple times; offering Mother bus passes; using Ohio Guidestone mental health agency at Mother's request; contacting and meeting with the program supervisor; providing a letter to Mother detailing what she had to do for her case plan; and constantly trying to have conversations with Mother about the need to complete the services to get herself better and get O.W. back. Pounds felt Mother understood what she was supposed to be doing. Pounds believes SCDJFS has made reasonable efforts to assist Mother in reunifying with O.W.

{¶14} Pounds last had contact with Mother the day prior to the trial, via text. Pounds last saw Mother on March 11, 2021. On this date, Mother told Pounds she went somewhere in Columbus for treatment and she went to CommQuest for a drug screen. However, Pounds never received any information from CommQuest about a drug screen

or from a treatment center in Columbus, despite her request that Mother provide this information.

{¶15} Mother is on a two-hour bi-weekly visitation schedule. Mother is usually emotional at the visits and does a lot of crying. Mother sometimes asks O.W. questions where the supervisor has to re-direct her, such as "are they touching your private areas" or "are they saying mean things about me?" Mother would frequently be late for visits and/or not show for visits. From June to August of 2020, Mother was either late or failed to appear for seven visits. This upset O.W., so SCDJFS required Mother to show up early before they brought O.W. to the visits.

{¶16} Pounds does not believe the risks present at the beginning of the case have been reduced, and Pounds does not have any information that Mother is addressing any of the issues that were present at the beginning of the case. Pounds does not believe Mother would address her issues if the court were to give her more time.

{¶17} Pounds also testified in the best interest portion of the trial. O.W. was initially placed with a relative, but, after several months, the relative requested O.W. be removed from her home and told SCDJFS she could not care for him long-term. O.W. is doing very well in his foster home. He does sometimes act aggressively after visitation, but he can be redirected. O.W. is in counseling, but is otherwise healthy with no medical issues.

{¶18} O.W. is bonded to the foster family and other children in the home. Pounds stated Mother and O.W. do have a bond. However, Pounds believes the benefits of permanency outweigh any damage that might occur through breaking that bond. This is because Mother is heavily involved with drugs and cannot stay clean for any length of

time. Mother has appeared for visits under the influence. Pounds stated O.W. is too young to try to keep himself safe if Mother is under the influence of drugs. Pounds believes O.W. would benefit from a structured and stable home environment, which Mother cannot give him. Pounds believes it is in the best interest of O.W. for permanent custody to be granted to SCJDFS.

{¶19} The GAL submitted a report. In the report, the GAL recommended SCDJFS be granted permanent custody of O.W. She believes the foster parents offer a safe, stable, and secure home for O.W. The GAL noted that Mother has a significant history with SCDJFS dating back to 2011, does not have custody of her other children, has not been regularly involved in case plan services, and does not reliably attend visits with O.W.

{¶20} The GAL stated O.W. is doing well with the foster family. He loves playing with his foster sisters and is proud to show off his newborn sister. O.W. is thriving in the foster home and getting more comfortable and confident every day. O.W. recently started attending therapy and it is going well. The GAL testified at trial that it is in the best interest of O.W. for SCDJFS to be granted permanent custody of O.W.

{¶21} The trial court issued a judgment entry on July 19, 2021. The trial court first found that O.W. has been in the temporary custody of SCDJFS for over twelve months of the last twenty-two consecutive month period because, in this case, O.W. has been in the temporary custody of SCDJFS for a period of seven months prior to the filing of the motion for permanent custody, and, in Case Number 2017JCV00679, he was placed in the temporary custody of SCJDFS from July 19, 2017 to May 16, 2019, a period of nineteen months.

{¶22} The trial court then noted Mother's extensive history with SCJDFS. Mother currently has five children, and none of them are in her custody. Two of Mother's older children have been placed in the legal custody of a relative and one of her older children was placed in the permanent custody of SCJDFS. Mother's issues have been concerns with her mental health, substance abuse, and criminal history, which negatively impact her ability to parent her children.

{¶23} The trial court found Mother has not substantially complied with her case plan because: she has not actively participated in her mental health treatment, despite SCJDFS complying with her request to treat at Ohio Guidestone; she is not actively engaged in substance abuse counseling; she did not drop a urine screen as requested; and she was charged with drug-related offenses in Alliance Municipal Court.

{¶24} The trial court additionally found SCJDFS made reasonable efforts to make it possible for O.W. to return home. For example, SCDJFS took significant effort to write down services which Mother would need to reunify with O.W., and the agency took into consideration the wishes of Mother as to which agencies she wanted to utilize to complete services.

{¶25} The trial court found that, notwithstanding reasonable case planning and diligent efforts by the agency, Mother has failed to remedy the conditions that caused O.W. to be placed into the temporary custody of SCJDFS. Further, that O.W. cannot be placed with Mother within a reasonable time, nor should O.W. be placed with her.

{¶26} The trial court then did a detailed analysis of the best interest factors contained in R.C. 2151.414(D), and concluded it was in the best interest of O.W. for permanent custody to be granted to SCJDFS, and the harm caused by severing any

minimal bond between Mother and O.W. is outweighed by the benefits of permanency for O.W. The trial court analyzed the factors as follows: O.W. is healthy and developmentally on target; O.W. is comfortable in the foster home and with the other children in the foster home; O.W. is bonded to everyone in the foster home; O.W. was placed with Mother's sister for approximately five months, but Mother's sister contacted the agency and stated she could no longer care for O.W.; Mother's visits were sporadic and the agency had to have her appear early to make sure she would actually show up for the visit; Mother was emotional, cried during visits, and would question O.W. about his placement; Mother would show up to some visits under the influence of drugs and/or alcohol; O.W. is bonded with Mother, but would return to playing after trying to comfort Mother; Pounds does not believe Mother can provide a safe environment; Pounds believes it is in the best interest of O.W. for permanent custody to be awarded to SCJDFS; and the GAL believes it is in the best interest of O.W. for permanent custody to be awarded to SCJDFS.

{¶27} Mother appeals the July 19, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶28} "I. THE TRIAL COURT'S JUDGMENT THAT O.W. CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶29} II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Permanent Custody*

{¶30} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶31} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶32} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶33} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

{¶34} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶35} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶36} In her first assignment of error, Mother makes two separate arguments. First, she contends the elements of R.C. 2151.414(B)(1)(a) and (E) were not met because the finding that O.W. could not or should not be placed with her within a reasonable time was not proven by clear and convincing evidence.

{¶37} We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the child has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Pounds testified O.W. was in the temporary custody of SCDJFS from May 12, 2020 to January 5, 2021, a period of approximately seven months. Additionally, O.W. was in the temporary custody of SCDJFS from July 17, 2017 to May 16, 2019, a period of nineteen months. Thus, O.W. has been in agency custody for a period of time in excess of twelve of the prior twenty-two consecutive months.

{¶38} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶39} Because Mother has not challenged the twelve of twenty-two-month finding, we would not need to address the merits of her claim with regards to the trial court's determination that O.W. could not or should not be placed with Mother within a reasonable time.

{¶40} However, even if we consider Mother's argument, we find the trial court did not commit error in determining the child cannot be placed with Mother at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the

factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶41} Though Mother contends she could have complied with her case plan within a few months, the evidence at trial does not support her contention. Rather, a review of the record supports the trial court's conclusion that O.W. cannot be placed with Mother within a reasonable time.

{¶42} Mother has a significant ten-year history with SCDJFS, losing custody of multiple children due to substance abuse, mental health issues, and criminal activity. Pounds testified Mother has not substantially completed her case plan and did not remedy the conditions that first existed when O.W. was removed from the home. Specifically, Mother continues to have substance abuse issues, mental health issues, and continued criminal charges. As recently as one month prior to the trial, Mother refused to complete a drug screen with Pounds and/or at CommQuest. Additionally, on the day the trial in this case was initially scheduled, Mother asked for a continuance, stating she was sick. However, she was arrested on drug-related charges in Alliance on that same day.

{¶43} Mother's visitation has never progressed past supervised visitation at the agency during the case, and she would frequently be late for visits and/or not show for visits. Further, O.W. was previously in agency custody for nineteen months. This is primarily due to Mother's continued drug use and criminal activity, and her inability to complete mental health or substance abuse treatment.

{¶44} Mother also contends the "reasonable efforts" determination was against the weight of the evidence because "reasonable efforts" required an extension to allow

Mother the opportunity to adequately address her mental health and substance abuse concerns.  We disagree with Mother.

{¶45}  First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing.  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419.  The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231.  In this case, the record reflects that the juvenile court made reasonable-efforts findings at various points throughout the case for the child, as demonstrated in judgment entries dated July 26, 2019, October 17, 2019, January 22, 2020, June 19, 2020, and December 17, 2020.  Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts.  *Id.*

{¶46}  In its July 19, 2021 judgment entry, the trial court found SCDJFS made reasonable efforts to eliminate the continued removal of the child from the child's home and return the child to the home.  Mother contends the efforts of SCJDFS were not reasonable because there was no extension to allow Mother the opportunity to address her mental health and substance abuse issues.

**{¶47}** In order to grant a six-month extension, a trial court must find, by clear and convincing evidence, (1) that such extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is a reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab*, 5th Dist. Tuscarawas Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008-Ohio-1638.

**{¶48}** As discussed below, the evidence before the trial court supports the conclusion that O.W.'s interests were best served by an award of permanent custody to SCJDFS.

**{¶49}** Further, Pounds testified Mother has not substantially complied with her case plan. Though Mother wanted to complete her mental health treatment at Ohio Guidestone, she never participated with her case manager or therapist. Mother is not engaged in substance abuse treatment, and was terminated from CommQuest in September of 2020 for non-compliance. Approximately one month prior to trial, Pounds asked Mother to complete a drug test. Mother refused, and stated she would complete one through CommQuest. However, Mother never went to CommQuest to complete the drug test. Additionally, Mother had several drug-related criminal charges pending at the time of trial. Pounds stated Mother is heavily involved with drugs and cannot stay clean for any length of time, and Mother has appeared for visits under the influence. Throughout the case, Mother never made sufficient progress on her case plan to justify an expansion beyond supervised visitation.

**{¶50}** Finally, there is not reasonable cause to believe O.W. will be reunified with Mother or otherwise be permanently placed with her in six months. Despite Mother's

argument, Pounds testified she does not believe Mother would address her issues if the court were to give her more time.

{¶51}  The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case.  *In the Matter of J.H.,* 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184.  We find there is competent and credible evidence to support the trial court's determination that SCDJFS' efforts were reasonable and diligent under the circumstances of the case.  Pounds testified to the extensive efforts the agency made.  These included:  meeting with Mother regularly, giving Mother the case plan in writing several times, offering Mother bus passes, using the mental health agency that Mother requested, and constantly trying to have conversations with Mother about the need to complete services to get herself better to get O.W. back.

{¶52}  Mother's first assignment of error is overruled.

*Best Interest*

{¶53}  Mother also argues the trial court's determination that the best interest of the child would be served by the granting of permanent custody to SCDJFS was against the manifest weight and sufficiency of the evidence.  Mother cites to the testimony by Pounds that O.W. has a bond with Mother, and Mother's compliance with portions of her case plan.

{¶54}  We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned."  *In re Mauzy*

*Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶55} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶56} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

{¶57} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶58} We find the trial court did not commit error in finding that granting permanent custody to SCDJFS was in the best interest of O.W. O.W. has been in the custody of SCJDFS for over half of his life. Mother is still heavily involved with drugs, and cannot stay clean for any length of time. Mother has appeared for visits with O.W. under the influence. Pounds stated O.W. is too young to keep himself safe when Mother is using drugs. The GAL noted Mother has a significant history with SCJDFS and does not reliably attend visits with O.W.

{¶59} Pounds stated that while O.W. and Mother do have a bond, she believes the benefits of permanency outweigh any damage that might occur through breaking that bond. Pounds believes O.W. benefits from a structured and stable home and Mother cannot give this to him. The GAL believes the foster parents offer a safe, stable, and secure home for O.W.

{¶60} Both Pounds and the GAL testified O.W. is doing very well in his foster home. O.W. is in counseling, but is otherwise healthy. O.W. is bonded to the foster family and loves playing with his foster siblings. O.W. is thriving in the foster home, and getting more comfortable and confident every day.

{¶61} Pounds testified it is in the best interest of O.W. for permanent custody to be granted to SCJDFS. The GAL also stated it is in the best interest of O.W. to be placed in the permanent custody of SCDJFS.

{¶62}  We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCDJFS is in the best interest of the child is supported by competent and credible evidence.  Mother's second assignment of error is overruled.

{¶63}  Based on the foregoing, Mother's assignments of error are overruled.

{¶64}   The July 19, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Hoffman, J.,and

Wise, Earle, J, concur